UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LOPEZ,<br><br>        Plaintiff,<br><br>        v.<br><br>D. C. THOMAS,<br><br>        Defendant. | Case No. 21-cv-07136-PJH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29, 39, 40, 47 |

        This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at Pelican Bay State Prison ("PBSP"). Plaintiff alleges that defendant Correctional Officer Thomas used excessive force against plaintiff while stopping a fight. Plaintiff filed a motion for summary judgment on the merits, and defendant filed a motion for summary judgment citing administrative exhaustion and on the merits. Defendant also included video footage of the incident. The parties filed oppositions and replies to the respective motions. The court has reviewed all of the filings and video evidence, and for the reasons set forth below, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

## MOTION FOR SUMMARY JUDGMENT

### Legal Standard

        Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

1  reasonable jury to return a verdict for the nonmoving party.  *Id.*

2  The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party.  If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**Exhaustion**

"The PLRA [Prison Litigation Reform Act] mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983."  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *Id*. at 1168.  The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust.  *Id*. at 1172.  If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Id*.  The ultimate burden of proof remains with the defendant, however.  *Id*.  If undisputed evidence viewed in the light most

favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id*.

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

**Eighth Amendment**

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (omission in original) (internal quotation marks and citation omitted). When a prison official stands accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a

forceful response. *Id*. at 7; *see, e.g.*, *Simmons v. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) (guard's decision to shoot the closer of two fighting inmates with sponge rounds, which was the lowest level of force available to him, to stop the fight and keep staff and prisoners safe was not an excessive use of force).

### Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such a right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

### Facts

A review of the record indicates that the following facts are undisputed unless otherwise noted:

### Incident

On November 18, 2018, at approximately 12:30 p.m., plaintiff was on the yard with inmate Ramirez and the two were walking around a track.  MSJ, Thomas Decl. ¶ 4; Duan

Decl., Ex. D. Plaintiff's Deposition at 58-59.[1]  As they were walking, inmate Raper called to them, but plaintiff was not sure if Raper was calling to him or Ramirez.  Plaintiff's Deposition at 61.  Plaintiff and Ramirez walked towards Raper.  *Id*.; Duan Decl. Ex. B Video Footage #35913292 at 12:30:58.  Raper and Ramirez exchanged words about "disrespect" and then Raper "started swinging."  Plaintiff's Deposition at 63.  Plaintiff and Ramirez are acquaintances.  *Id*. at 66-67.  Plaintiff did not know Raper and did not know why Ramirez and Raper were interacting.  *Id*.

Plaintiff, Ramirez and Raper began to fight.  Video Footage #35913292 at 12:31:04.  Plaintiff participated in the altercation and did "make a few swings" to "defend himself."  Plaintiff's Deposition at 121.  Plaintiff hit Raper with his fists.  Video Footage #35913292 at 12:31:03-12:31:20.

At the start of the fight defendant Thomas heard an unidentified correctional officer yell "get down."  MSJ, Thomas Decl. ¶ 4.  Defendant looked around the yard and observed three inmates hitting each other in the face and upper torso area with their fists.  *Id*.  Defendant responded to the situation because, based on his training and experience, serious bodily injury could occur if the fight continued.  *Id*. ¶ 5.

As the fight continued, Raper grabbed plaintiff's jacket and held onto it while he hit Ramirez.  Plaintiff's Deposition at 66.  Plaintiff responded by hitting Raper and twisting his arm.  *Id*. at 73, 75; Video Footage #35913292 at 12:31:07.  Plaintiff stated that he was only trying to free himself from Raper's grip.  Plaintiff's Deposition at 73.  Plaintiff broke free from Raper's grip but reengaged in the fight.  Video Footage #35913292 at 12:31:10-11.

Correctional officers gave multiple verbal warnings to stop fighting and get down.  Thomas Decl. ¶¶ 4, 7.  Smoke grenades were deployed near the fight, but the three continued fighting.  *Id*. ¶ 6; Video Footage #35913292 at 12:31:14.  Plaintiff did not recall

---

[1] To the extent plaintiff argues that the deposition should be stricken pursuant to Federal Rule of Civil Procedure 30(e), any such request is denied.  Plaintiff has not requested any changes or explained the reasons for such changes.

5

hearing anyone order them to "get down," but conceded the order was likely given because "that's the protocol". Plaintiff's Deposition at 77-78. Plaintiff did witness smoke in the area. *Id*. at 77.

Correctional officers, including defendant, proceeded to the area, but they did not have time to discuss a strategy. Thomas Decl. ¶ 7. Based on his training and experience, defendant knew that when responding to an incident such as this, staff is expected to evaluate the totality of the circumstances involved, including an inmate's actions, demeanor, and behavior, in an effort to determine the best course of action and tactics needed to resolve the situation. *Id*. ¶ 3.

As staff responded, Raper lost his balance and fell to the ground, leaving approximately eight feet between Raper and plaintiff. Plaintiff's Deposition at 78-79; Video Footage #35913292 at 12:31:18. At this time, Ramirez was also on the ground. Plaintiff's Deposition at 80; Video Footage #35913292 at 12:31:19. Plaintiff remained standing. Video Footage #35913292 at 12:31:24.

At this time approximately nine correctional officers arrived. Video Footage #35913292 at 12:31:23. Based on how the other correctional officers dispersed into the area, defendant believed he was in a better position to respond to plaintiff and allow the other officers to respond to Raper and Ramirez. Thomas Decl. ¶ 8; Video Footage #35913292 at 12:31:25.

Defendant observed plaintiff standing in a combative stance near Raper, who by this time had stood back up. Thomas Decl. ¶ 8; Video Footage #35913292 at 12:31:26. Defendant also observed that plaintiff was not getting on the ground. *Id*. To get plaintiff to comply with the commands to get down and to stop further escalation of the fight, defendant used a single forward strike with his baton to plaintiff's upper leg. Thomas Decl. ¶ 8; Video Footage #35913292 at 12:31:28. Defendant had to stretch out to strike plaintiff's leg, causing defendant to lose his balance and fall down. Thomas Decl. ¶ 8; Video Footage #35913292 at 12:31:28. Plaintiff remained in a standing position, for a moment, after the strike from defendant's baton. Video Footage #35913292 at 12:31:29.

Defendant stood up and gave plaintiff another verbal command to get down, and plaintiff complied.  Thomas Decl. ¶ 8; Video Footage #35913292 at 12:31:30.

Plaintiff was then restrained, taken away for a medical evaluation and offered new clothes that were not contaminated with smoke.  Thomas Decl. ¶¶ 9, 10.  Plaintiff's leg was in pain for three months, and he had a large black bruise on the leg for three months.  Docket No. 29-1 at 1.

**Administrative Appeals**

For the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided an administrative appeals process, in accordance with Title 15 of the California Code of Regulations, that permitted an inmate to appeal any departmental decision, action, condition, or policy that has a material adverse effect on the inmate's health, safety, or welfare.  Cal. Code Regs. tit. 15, § 3084.1(a) (repealed 2021).  To resolve their issues through the administrative appeals process, inmates must have submitted a CDCR 602 Form, commonly referred to as an appeal form, describing the issue and action requested.  Cal. Code Regs. tit. 15, § 3084.2(a) (repealed 2021).

At the time of this incident, the inmate appeal process consisted of three levels of appeal: (1) first-level appeal, (2) second-level appeal to the institution head or designee, and (3) third-level appeal to the Secretary of CDCR.  Cal. Code Regs. tit. 15, § 3084.7 (repealed 2021).  First- and second-level appeals were handled by staff located at the respective institutions.  *Id*.  Third-level nonmedical appeals were received and decided by CDCR staff at the Office of Appeals.  Cal. Code Regs. tit. 15, § 3084.7(d) (repealed 2021).   An inmate needed to exhaust all three levels of review for an appeal to be considered exhausted.  Cal. Code Regs. tit. 15, §§ 3084.1(b); 3084.7 (repealed 2021).

Plaintiff is familiar with the administrative appeal process and has filed approximately 500 appeals.  Plaintiff Deposition at 93.  Plaintiff filed two appeals regarding the November 18, 2018, incident.  MSJ, Moseley Decl. ¶¶ 8, 9.

In appeal No. PBSP-18-03389, plaintiff raised issues with the rules violation report that he received for being involved in the fight.  MSJ, Moseley Decl., Ex. 2.  He argued

1    that he was erroneously found guilty of fighting with another inmate and that the guilty
2    finding should be reversed.  There was no mention in the appeal of excessive force being
3    used against him or defendant.  *Id*.  This appeal was exhausted through the third level of
4    review.  Moseley Decl. ¶ 9; Ex. 2.
5    　　　Plaintiff also filed appeal No. PBSP-20-00630, in which he alleged that prison
6    officials never disclosed a confidential memorandum related to the incident.  *Id*. ¶ 10; Ex.
7    3.  This appeal was screened out and never reached the final, third level, of review.  *Id*.

**ANALYSIS**

**Exhaustion**

　　　In this case defendant demonstrated that there was an available administrative remedy that plaintiff failed to exhaust.  Plaintiff has failed to meet his burden in showing that the administrative appeals process in general was unavailable and incapable of use or that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

　　　It is undisputed that only one appeal related to the fight in the yard was submitted and fully exhausted.  That appeal, No. PBSP-18-03389, raised issues with the rules violation report plaintiff received for being involved in the fight, arguing that plaintiff was erroneously found guilty of fighting with the other inmate and that the guilty finding should be reversed.  The appeal did not mention excessive force or defendant.

　　　In *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit noted that "the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  *Id*. at 1120.  In *Griffin*, the plaintiff failed to mention in his grievance that prison staff were ignoring a nurse's order that remedied the problem.  *Id*. at 1118-19.  As a result the prison officials, who were aware of the nurse's order, reasonably believed that the order had been carried out and had solved the problem.  In view of these facts, the Ninth Circuit concluded that the plaintiff failed to properly exhaust his administrative remedies because he did not provide notice of the prison staff's disregard of the nurse's order and thus never alerted prison officials "to the

8

nature of his problem." *Id*. at 1121.

Similar to *Griffin*, plaintiff failed to sufficiently alert prison officials to the nature of his problem.  The one appeal he submitted and exhausted failed to mention both the defendant and claim in this case.  Prison officials could not know from this appeal that plaintiff was alleging he was the victim of excessive force by defendant.

Plaintiff argues that while he did not discuss the excessive force in the appeal, he raised the issue verbally in an interview about the appeal with a prison official.  Opposition (Docket No. 45) at 12.  Plaintiff states that he was informed by this official that he would receive a separate response regarding the allegation of excessive force by defendant, but he never received a response.  Plaintiff further states that the prison official who provided this information retired and he was never informed that he had to file a separate appeal.  *Id*. at 12-13.

Plaintiff's argument is unavailing.  Proper exhaustion during the relevant time period required a substantive decision at each level of review.  Cal. Code Regs. tit. 15, § 3084.1(b).  An inmate could not circumvent the appeals process by raising new issues for the first time at the second or third level of review. Cal. Code Regs. tit. 15, § 3084.6(b)(16).

Plaintiff's inclusion of a new allegation during an interview that occurred after the filing of his appeal was improper and did not exhaust his claim.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91 (footnote omitted).

Nor does plaintiff provide more information to support his assertion that he was not informed that he had to file a separate appeal with the excessive force claim.  Plaintiff noted in his deposition that he was familiar with the appeals system and had filed hundreds of appeals.  For all these reasons, plaintiff has not exhausted his administrative

9

remedies. Even assuming plaintiff did properly exhaust, as will be discussed below, his claim fails on the merits.

**Excessive Force**

There are no facts in dispute in this case. It is undisputed that while plaintiff did not initiate the fight with the other inmate, plaintiff was fighting and continued to fight when he could have moved away. It is also undisputed that plaintiff continued to fight after smoke grenades were deployed among plaintiff and the other inmates. It is also undisputed that defendant struck plaintiff once on the leg with a baton while plaintiff was in a combative stance near the other inmate and not complying with orders to get on the ground.

Even looking at the evidence in the light most favorable to plaintiff, defendant is entitled to summary judgment. After viewing the video and other evidence submitted, there is nothing to support plaintiff's assertion that defendant's one baton strike to the leg was for the malicious and sadistic purpose of causing him harm.

The evidence demonstrates that the three inmates were engaged in a fight and did not stop even when they were enveloped in smoke. Multiple correctional officers responded immediately to stop the fight in order to prevent any serious injuries. Plaintiff was in a combative stance in close proximity to the inmate he was fighting when defendant struck him once on the leg with the baton. No other force was used against plaintiff once he lowered himself to the ground. Defendant has met his burden in demonstrating the use of force was to maintain or restore discipline and prevent the fighting inmates from suffering further injuries.

The Ninth Circuit recently found that there was no constitutional violation when a correctional officer fired three sponge-tipped plastic rounds at an inmate who was engaged in a fight despite the rounds breaking the inmate's leg and injuring his butt and thigh. *Simmons*, 47 F.4th at 930. Similar to the instant case, the Ninth Circuit noted that there was no improper motive and that the correctional officer had a duty to keep staff and inmates safe. *Id*. at 933; *see also Williams v. Austen*, No. 4:19-cv-06882 YGR, 2021

WL 4222079, at *6 (N.D. Cal. Sept. 16, 2021) (holding a defendant's use of a more lethal weapon, a 40-mm. launcher, to stop a plaintiff and another inmate from fighting was reasonable given the circumstances: that the inmates continued to fight, ignoring verbal commands and chemical agent grenades dispersed to the area, and defendant intended, in good-faith, to restore discipline with his conduct and did not intend to act maliciously and sadistically to cause harm to the plaintiff.)  For all these reasons, summary judgment is granted for defendant.

The court has not found a constitutional violation, and even if there was a violation, defendant would be entitled to qualified immunity.  It would not have been clear to a reasonable official that striking an inmate once in the leg with a baton was unlawful when the inmate had been fighting and remained in a combative stance near the opposing inmate.  Defendant is entitled to qualified immunity.

## CONCLUSION

1. For the reasons set forth above, defendant's motion for summary judgment (Docket No. 40) is **GRANTED** and plaintiff's motions for summary judgment (Docket Nos. 29, 39) are **DENIED**.  The case is dismissed with prejudice.  Plaintiff's motion to file a supplemental response (Docket No. 47) is **GRANTED** and the court has reviewed the filing.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  1/20/2023

                                        **/s/ Phyllis J. Hamilton**
                                        PHYLLIS J. HAMILTON
                                        United States District Judge

\\candoak.cand.circ9.dcn\data\users\PJHALL\_psp\2021\2021_07136_Lopez_v_Thomas_(PSP)\21-cv-07136-PJH-sj.docx